[Civ. No. 1649. Fifth Dist. Apr. 11, 1973.]

WILLIAM H. CARROLL, Plaintiff and Respondent, v.
CIVIL SERVICE COMMISSION OF KERN COUNTY et al.,
Defendants and Appellants.

562

## COUNSEL

Ralph B. Jordan, County Counsel, and D. N. Reid, Deputy County Counsel, for Defendants and Appellants.

King, Eyherabide, Owen, Anspach & Newell and Stephen Eyherabide for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—One question is presented on this appeal. It is: When a county employee is reinstated in his position with back pay after wrongful dismissal, can the employing county deduct from the back wages otherwise due the employee a sum equal to the wages the employee would have earned for the period of time while he was in jail for the commission of crimes?

A history of this dispute is set forth in this court's opinion on a former appeal reported in *Carroll* v. *Civil Service Commission* (1970) 11 Cal. App.3d 727 [90 Cal.Rptr. 128]. In sum, this court affirmed one order of the Superior Court of Kern County directing the Civil Service Commission of Kern County to restore respondent to his employment with the county department of roads and bridges on the ground that the time

for appeal therefrom had expired. (*Carroll* v. *Civil Service Commission, supra,* 11 Cal.App.3d at p. 733.) The court reversed, however, insofar as a second and later order directed that respondent receive full back pay because it "was contrary to law in that it did not provide for offsets to which the county legally may be entitled. Such offsets include, for example, (A) amounts paid by the county to or for the benefit of Carroll since his dismissal, and (B) Carroll's earnings from other employment since his dismissal." (At p. 734.) The court directed that "Carroll must be restored to his job with whatever back pay he may legally be entitled to receive." (At p. 734.)

Upon remand, the commission ordered there be deducted from respondent's back pay (among other items not in dispute) the sum of $5,050.90, which represents the amount he would have earned for 147 days if he had been working for the county and had not been in the county jail for violations of Penal Code section 647, subdivision (f) (public drunkenness).[1]

After a hearing before the superior court upon an order to show cause directed to the commission, the court ordered that the commission deduct $29.40[2] instead of $5,050.90 as an offset for the 147 days that respondent was in jail.

The cause is now before us upon an appeal by the county from that order.

While the former opinion is the law of the case insofar as it decided the questions presented (*Young* v. *Metropolitan Life Ins. Co.* (1971) 20 Cal.App.3d 777, 779 [98 Cal.Rptr. 77]), that opinion did not purport to decide all of the possible offsets to which the county may be legally entitled. It was exemplary, not exhaustive. It does not, therefore, answer the question presented on this appeal.

■ A wrongfully discharged private or public employee has a duty to mitigate damages by making a reasonable effort to seek similar available employment. (*California School Employees Assn.* v. *Personnel Commission* (1973) 30 Cal.App.3d 241 [106 Cal.Rptr. 283] (hg. den. April 4, 1973); *Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615]; *Mass.* v. *Board of*

---

[1]It appears from the record that the 147 days comprises a series of shorter confinements between July 1, 1969, and June 30, 1970—a period of one year.

[2]$29.40 is the amount Carroll was actually paid by Kern County for the 147 days that he was incarcerated. While in jail, Carroll was paid 20 cents per day, for a total of $29.40.

*Education* (1964) 61 Cal.2d 612, 627-630 [39 Cal.Rptr. 739, 394 P.2d 579]; *Hancock* v. *Board of Education* (1903) 140 Cal. 554, 562 [74 P. 44]; *Rosenberger* v. *Pacific Coast Ry. Co.* (1896) 111 Cal. 313, 318 [43 P. 963]; *Ross* v. *Board of Education* (1912) 18 Cal.App. 222, 224-225 [122 P. 967]; *Taylor* v. *Marshall* (1910) 12 Cal.App. 549, 553 [107 P. 1012].)

█ The general rules are summarized in *California School Employees Assn.* v. *Personnel Commission, supra,* 30 Cal.App.3d 241, at pages 249-250: "The general rule is that the burden of establishing mitigation rests with the employer, and in the absence of proof of other earnings, a presumption arises that the employee has been damaged in the 'sum which he would have received if he had performed the required duties in full.' [Citation.] The measure of recovery of a wrongfully discharged employee is the amount of salary he would have received plus other benefits such as retirement, accumulated vacation and sick time, pay increases and interest on pay increases from date of accrual to judgment, *less the amount which the employer affirmatively proves the employee has earned or with reasonable diligence might have earned from other employment.* [Citations.]"

█ A review of the record before us demonstrates that the appellants, upon whom the burden of proof rested, presented no evidence showing that other similar employments were available to respondent or the amount he would have earned from such employment during the periods he was in jail. In the face of this vacuity and in support of the order, we are required to affirm the trial court's implied finding that no such other similar employment opportunities existed during these relevant periods of jail time.

Appellants argue that since respondent was not available for county employment during the jail times and the county was not preventing him from performing his duties during those periods, he should not be compensated for them. (*State Bd. of Equalization* v. *Superior Ct.* (1942) 20 Cal.2d 467, 475 [127 P.2d 4].)

Some cases have stated in general terms that before the employee can recover he must show that he was ready, willing and able to perform the duties of his position. (*California School Employees Assn.* v. *Personnel Commission, supra,* 30 Cal.App.3d 241, 245-246; *Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 372 [210 P.2d 757]; *Payne* v. *Pathe Studios, Inc.* (1935) 6 Cal.App.2d 136, 141-142 [44 P.2d 598]; *Ross* v. *Board of Education* (1912) 18 Cal.App. 222, 224-225 [122 P.

967]; *Taylor* v. *Marshall, supra,* 12 Cal.App. 549, 553.)[3] The factual situation in those cases, however, shows that there was no issue regarding the employee's availability; therefore, there was no in-depth discussion of the rule's application and limitations.

In *Downs* v. *Atkinson* (1929) 207 Cal. 259, 262 [277 P. 723], and *Stone* v. *Bancroft* (1896) 112 Cal. 652, 657 [44 P. 1069], the court in its statement of the rule limits its application to those situations wherein the employee has not been discharged but is prevented from performing his contract of employment by the employer's not making work available to him.

Some authorities speak of the obligation of an employee after discharge as being one of making ". . . an offer to perform the duties belonging to the office or position or a tender of service. . . ." (4 McQuillan, Municipal Corporations, § 12.186, at pp. 54-55.)

A somewhat analogous situation was dealt with by the court in *Ahlstedt* v. *Board of Education* (1947) 79 Cal.App.2d 845, 857 [180 P.2d 949]. In that case the Board of Education contended that a wrongfully discharged employee's back salary should be exclusive of the period during which she was unable to perform her duties due to illness. The trial court found that the illness was caused by the wrongful discharge. In addition to holding that such causation was adequate reason to disagree with the board's argument, the appellate court held there was an additional reason why the deduction should be denied. It said: "Furthermore, no showing of prejudice to appellants appears by reason of respondent's illness. Her inability to perform the duties of her position was not occasioned by her illness. She was excluded from her position by the acts and conduct of respondents and not by reason of her physical or mental condition." (At p. 857.)

In the case at bench it has heretofore been held that the discharge was wrongful and that respondent was entitled to have occupied the position and performed the duties of the job during the entire period. That judgment became final, without appeal, and we cannot now reexamine its basis but must assume it rests upon a proper factual and legal foundation. The wrongful discharge of and persistence in refusal to reinstate respondent was the legal cause of respondent's failure to perform the duties of

---

[3]Government Code section 19584 states in part: "Salary shall not be authorized or paid for any portion of a period of punitive action that the employee was not ready, able, and willing to perform the duties of his position, whether such punitive action is valid or not or the causes on which it is based state facts sufficient to constitute cause for discipline."
This section governs state civil service employees and is not controlling here.

his position from the day he was discharged until the day he was reinstated. There is no evidence that the county at any time during this period offered to permit him to perform his duties. Had it done so, it would then have been in a position to claim mitigation after he had had a reasonable opportunity to accept the offer of reinstatement but was unable or unwilling to do so. And had such period of disability continued after an appropriate offer of reinstatement and a reasonable opportunity to accept the offer it would probably have been grounds for further disciplinary action. In our view, however, having wrongfully caused the initial discharge, the county cannot take advantage of the fortuitous circumstance of a disability of the employee during the period of discharge without first having purged itself of its own wrong by offering to reinstate the employee. Otherwise, the effect would be to further penalize the person wronged rather than requiring the wrongdoer to correct its initial error. It would be equivalent to permitting a party to a contract to take advantage of its own act or omission to escape liability thereon (*Overton v. Vita-Food Corp., supra,* 94 Cal.App.2d 367, 371) and to benefit from its own wrong (Civ. Code, § 3517).

Thus the concept of being ready, willing and able to perform the duties of the position must necessarily be qualified by making the duty mutual, that is, that the employer also be ready and willing to perform by offering reinstatement to the employee. Until the employer does so, the employee is not required to stand by in readiness during the entire period of the discharge or suspension. To hold the employee is required to stand idly by in readiness to perform would run counter to the concept of duty to mitigate by making reasonable effort to seek other similar employment since an employee thereby would be unable to accept other employment for any substantial period.

The order is affirmed.

Franson, J., concurred.

Gargano, J., deeming himself disqualified, did not participate.

Appellants' petition for a hearing by the Supreme Court was denied June 7, 1973. Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.