62 Cal.Rptr.3d 69 (2007)
152 Cal.App.4th 1122
Ennis R. DAVIS, Plaintiff and Appellant,
v.
LOS ANGELES UNIFIED SCHOOL DISTRICT PERSONNEL COMMISSION et al., Defendants and Respondents.
No. B188435.
Court of Appeal of California, Second District, Division One.
June 28, 2007.
*71 Law Office of Audrey Y. Ripley and Audrey Y. Ripley, Los Angeles, for Plaintiff and Appellant.
Liebert Cassidy Whitmore and Pilar Morin, Los Angeles, for Defendants and Respondents.
*70 MALLANO, Acting P.J.
In 2001, plaintiff was demoted from his position of employment with the Los Angeles Unified School District (LAUSD). Before learning of the demotion, plaintiff commenced a disability leave for reasons unrelated to his employment. Due to his illness, plaintiff has remained unavailable for work ever since.
In 2003, the Personnel Commission of the LAUSD (Commission) found that the demotion was wrongful and ordered the LAUSD to reinstate plaintiff to his prior position, effective as of the date of the demotion. The Commission also concluded that plaintiff was not entitled to full back pay in light of his unavailability for work.
The primary question on appeal is whether an employee who is wrongfully demoted is entitled to full back pay for a period when he was not available for work due to a nonindustrial illness. We conclude that, because back pay is a makewhole remedy, intended to restore the employee to the financial situation that would have existed but for the employer's wrongful conduct, an employee is not entitled to earnings he or she would not have received in any event. We also conclude that the employee in this case was not entitled to immediate reinstatement given that he was medically unable to return to work.

I

BACKGROUND
In 1976, plaintiff Ennis Davis began employment with the LAUSD as a programmer *72 trainee. In 1999, he became the director of the information systems branch.
In July 2001, Davis's immediate supervisor received an anonymous interoffice memorandum accusing Davis of "generalized wrongdoing." The matter was referred to the general counsel's office for investigation. An attorney interviewed Davis's staff. In the interim, Davis was relieved of his duties and assigned to a new work location.
On October 26,2001, Davis met with one of his superiors and a representative from the personnel department to discuss the charges against him, namely, whether he had falsified time cards, allowed a subordinate to work two jobs, and failed to pay for personal calls made on his LAUSD cell phone.
On November 8, 2001, Davis met with the same individuals. He was presented with a notice of unsatisfactory service, accusing him of incompetence, inefficiency, insubordination, dishonesty, dereliction of duty, violation of written rules, behavior tending to injure the public service, and concealment of material facts. After the meeting, Davis went home. He also went to see his physician, who placed him on disability. Davis has been disabled since then and has not returned to work.
On appeal, Davis does not identify or describe his illness or disability. The record indicates that, at some point before the November 8, 2001 meeting, he had experienced chest pains, shoulder cramps, stomachaches, and neck pain. Davis had a "complete physical" and a battery of tests. The doctor did not find anything "physically wrong" with him and recommended that he undergo a psychiatric evaluation.
By certified letters sent to Davis's address on November 8 and November 28, 2001, the LAUSD notified him of a "Skelly hearing" (see Skelly v. State Personnel Bd. (1975) 15 Cal.3d 194, 124 Cal.Rptr. 14, 539 P.2d 774), at which he could respond to the charges against him. Davis did not respond to the letters, although he had replied to other certified mail sent to the same address. The LAUSD assumed that Davis did not want a hearing. Months later, the letters were returned, stamped "Attempted Not Known."
On December 11, 2001, the LAUSD presented a statement of charges to the LAUSD Board of Education, repeating the accusations made against Davis at the November 8, 2001 meeting. The board adopted the charges and demoted Davis to senior software engineer, a lower paying job, effective December 12, 2001. The LAUSD promptly informed Davis of the demotion by letter.
Davis made a workers' compensation claim, which was denied on the ground that his illness was not work related. He did not seek further review of the denial.
In February 2003, Davis exhausted his paid leave benefits. The LAUSD notified him by letter that (1) he could request unpaid leave in six-month increments, not to exceed 18 months, and (2) the failure to make such a request would result in his "separation" from employment. Davis decided not to request unpaid leave. On or about February 8, 2003, he was effectively laid off and was placed on a "reemployment list" for a period of 39 months. (See Ed.Code, § 45195; Com. rule 800(K), (M); section references are to the Education Code unless otherwise indicated.) If, during the 39-month period, Davis became able to assume the duties of his prior position, he would be reemployed in that position, his break in service would be disregarded, and he would be fully restored as a permanent employee. (See § 45195.) Eventually, Davis "cashed out" his retirement benefits, resulting in taxes and penalties for early withdrawal.
*73 Davis filed a timely appeal of his demotion with the Commission. A hearing officer was appointed. The hearing took place over several months. On February 14, 2003, the hearing officer issued a "Recommended Decision" detailing the evidence related to the charges and proposing that the Commission find in Davis's favor. In general, the hearing officer concluded that the evidence did not support the charges. She also found that, to the extent Davis's superiors believed he had engaged in wrongdoing, they did not comply with Commission rules requiring that he be afforded progressive discipline.
At a meeting on May 21, 2003, the Commission delayed a final decision on the appeal and allowed the parties to submit questions and arguments to the hearing officer concerning appropriate remedies. On June 30, 2003, the hearing officer issued a "Response to Questions/Arguments," recommending that Davis receive certain types of relief.
By resolutions adopted on July 9 and July 30, 2003, the Commission reviewed the findings and recommendations of the hearing officer. Although the Commission did not comment on the accuracy of the findings, it: (1) rescinded the demotion; (2) restored Davis to his prior position effective as of the date of the demotion; (3) held that Davis's separation from employment, due to the length of his absence, was not a bar to reinstatement; (4) ordered that Davis be paid "the difference between the amount of pay he should have received at the lower classification and the pay he should have received had he not been demoted ..., including differences in sick leave pay, vacation pay, and any other benefits"; (5) rejected Davis's request that he be awarded medical costs and damages for emotional distress; (6) directed that Davis be given a letter explaining to financial institutions the matters at issue in the proceedings; and (7) ordered that a statement be read or given to the staff regarding Davis's return to his prior position.
On October 17, 2003, the LAUSD paid Davis an additional $24,324 in back pay, consisting primarily of vacation pay that was based on his higher, predemotion rate of pay. There was no change in sick leave pay or other benefits. Davis did not provide the LAUSD with a statement from his treating physician releasing him to return to work. He was not reinstated.
On September 4, 2003, Davis filed the first of two petitions for a peremptory writ of mandate (Davis v. Personnel Commission of the Los Angeles Unified School District (Super.Ct., L.A.County, 2003, No. BS085478)). Davis alleged that the LAUSD had not reinstated him or paid him the salary he would have received if he had continued to work in his prior position. The superior court granted the petition in part, commanding the Commission to clarify its decision: (1) with respect to whether Davis was entitled to be reinstated "despite his continuing disability"; (2) specifying the amounts awarded to Davis, if any, "necessary to effect a just settlement of the [administrative] appeal" (quoting § 45307); and (3) specifying the amount of "accumulated leave," if any, restored to Davis (citing § 45192).
On January 7, 2005, the Commission filed a return to the writ, addressing each of the superior court's inquiries in turn. First, Davis remained eligible for reinstatement to his prior position if he demonstrated at any time before May 9, 2006, that he was fit for duty, and he complied with reemployment procedures. In particular, Davis needed to present "medical clearance" from his treating physician that he could return to his prior position; if Davis was medically restricted in the performance of his regular job duties, the matter would be reviewed to determine *74 essential job functions and reasonable accommodation. Second, although the Commission had paid Davis $24,324 in additional back pay, it denied, as unwarranted or unauthorized, his request for attorney fees and costs, damages for emotional distress, repayment of medical costs, restoration of benefit time, and reimbursement for taxes and penalties incurred as a result of his early withdrawal of retirement benefits. Third, no medical leave was restored.
On January 25, 2005, Davis filed his second petition, which was assigned to the same trial judge. The petition named the Commission, the LAUSD, and the LAUSD's personnel director as defendants. Davis alleged he was entitled to: (1) immediate reinstatement notwithstanding his inability to return to work; (2) full back pay from the date of the demotion based on his predemotion rate of pay, less any amounts actually received; and (3) all other requested relief denied by the Commission.
After briefing and argument by both sides, the trial court denied the petition, stating: (1) Davis was not entitled to be reinstated until he was medically able to resume the duties of his prior position; (2) he could not retain the status of a disabled employee for an unlimited period of time; (3) he had failed to prove that his illness was work related; and (4) he was entitled only to the disability benefits due an employee with a nonindustrial illness. Judgment was entered in favor of defendants. Davis appeals.

II

DISCUSSION
Because demotions adversely affect an employee's fundamental vested right in his or her job, a trial court exercises its independent judgment in reviewing an agency's findings of fact. (See Boctor v. Los Angeles County Metropolitan Transit Authority (1996) 48 Cal.App.4th 560, 572-573, 55 Cal.Rptr.2d 861.) Those findings come before the trial court with a strong presumption of correctness, and the burden is on the employee to prove that the administrative decision is contrary to the weight of the evidence. (See Fukuda v. City of Angels (1999) 20 Cal.4th 805, 808, 816-817, 819-822, 85 Cal.Rptr.2d 696, 977 P.2d 693.) On appeal, we review the trial court's findings of fact to determine whether they are supported by substantial evidence on the whole record. (Kazensky v. City of Merced (1998) 65 Cal.App.4th 44, 52, 76 Cal.Rptr.2d 356.)
We review questions of law de novo. (Bostean v. Los Angeles Unified School Dist. (1998) 63 Cal.App.4th 95, 107-108, 73 Cal.Rptr.2d 523; Riveros v. City of Los Angeles (1996) 41 Cal.App.4th 1342, 1349-1350, 49 Cal.Rptr.2d 238.)

A. Reinstatement
Davis argues that the Commission had to reinstate him immediately even though he was not medically able to work. Davis never sought to go back to work, nor did he provide a date when he might do so. This argument is without merit because reinstatement is synonymous with returning to work. (See Rivcom Corp. v. Agricultural Labor Relations Bd. (1983) 34 Cal.3d 743, 771, 773, 195 Cal.Rptr. 651, 670 P.2d 305 (Rivcom); Veguez v. Governing Bd. of the Long Beach Unified School Dist. (2005) 127 Cal.App.4th 406, 413, 422-424, 25 Cal.Rptr.3d 526; RGC (USA) Mineral Sands, Inc. v. NLRB (4th Cir.2002) 281 F.3d 442, 451; Bragg v. Navistar Intern. Transp. Corp. (7th Cir.1998) 164 F.3d 373, 376; Dortman v. ACO Hardware, Inc. (E.D.Mich.2005) 405 F.Supp.2d 812, 821; Acevedo Martinez v. Coatings, Inc. and Co. (D.P.R.2003) 286 F.Supp.2d 107, 116-117.)
*75 From November 2001 to February 2003, Davis was on paid leave for medical reasons. In February 2003, he was advised that his paid leave had expired, and he could request up to 18 months of unpaid leave. He made no request. Instead, he elected "separation," namely, to be placed on a reemployment list for 39 months, effective through May 8, 2006. Notwithstanding the separation, the Commission ordered that the LAUSD reinstate Davis to his prior position at any point before May 8, 2006, if he submitted a physician's statement releasing him to return to work. As of the date of the ruling below, October 6, 2005, Davis had not done so. Thus, the obstacle to reinstatement was notas Davis contendsthe "separation" resulting from his failure to request an unpaid leave. (See § 45195; Com. rule 800(K), (M).) Rather, it was his failure to present a medical release.
The Commission had the authority to condition Davis's reinstatement on a release from his physician. When the Commission sustains an employee's appeal, "it shall order his reinstatement upon such terms and conditions as it may determine appropriate." (§ 45307, italics added.) "The commission shall prescribe, amend, and interpret ... such rules as may be necessary to insure the efficiency of the service and the selection and retention of employees upon a basis of merit and fitness." (§ 45260, subd. (a).) Commission rule 808(F) states: "An employee absent from duty for any illness ... for more than five working days shall be required to submit a signed attending physician's statement or appropriate health form to the immediate administrator and may be referred by the District for health approval prior to readmission."
Nothing required the Commission to grant Davis an indefinite leave of absence permitting reinstatement whenever, if ever, he might recover from his nonindustrial illness. Nor was the Commission required to reinstate him "on the books" at full salary while he was medically unable to return to work.
The intended effect of reinstatement is to reduce or eliminate an employer's liability for monetary damages by returning the employee to the workplace and compensating him or her for actual work. (See Billetter v. Posell (1949) 94 Cal.App.2d 858, 861-862, 211 P.2d 621 [offer of reinstatement bars damages for wrongful discharge]; Ford Motor Co. v. EEOC (1982) 458 U.S. 219, 230-234, 102 S.Ct. 3057, 3064-3067, 73 L.Ed.2d 721 [offer of reinstatement limits back pay to period between date of employer's wrongful act and effective date of reinstatement]; Aguinaga v. United Food & Com. Workers Intern. (10th Cir.1993) 993 F.2d 1463, 1479 [back pay runs until reinstatement]; Salitros v. Chrysler Corp. (8th Cir.2002) 306 F.3d 562, 572 [reinstatement is alternative remedy for front pay].) Yet, as Davis sees it, the LAUSD should be liable for his lost earnings even after his so-called reinstatementuntil such time, if any, that he goes back to work.
"Reinstatement should only be ordered where the plaintiff, returning to work, successfully performs all the required duties of her position [with or without accommodation,] notwithstanding any disability she might have. Reinstatement is not merely to take advantage opportunistically of company benefits." (Criado v. IBM Corp. (D.P.R.1997) 962 F.Supp. 262, 264, affd. (1st Cir.1998) 145 F.3d 437, italics added.)
Davis mistakenly relies on Government Code section 31725 for the proposition that he should have been reinstated regardless of his ability to work. Under that statute, where a county discharges an employee based on a determination of permanent disability, but the county retirement board *76 concludes that the employee is not permanently disabled for retirement purposes, the county must reinstate the employee to "paid status" if he or she cannot return to active duty. (See Phillips v. County of Fresno (1990) 225 Cal.App.3d 1240, 1256-1258, 277 Cal.Rptr. 531; Hanna v. Los Angeles County Sheriff's Dept. (2002) 102 Cal.App.4th 887, 892-895, 125 Cal.Rptr.2d 686.) Government Code section 31725 ensures that where the county and the retirement board reach conflicting decisions about whether an employee is permanently disabledleaving the employee in limbo with no employment and no retirement the retirement board's determination is binding on the county, and the employee must be reemployed. (See Stephens v. County of Tulare (2006) 38 Cal.4th 793, 805, 43 Cal.Rptr.3d 302, 134 P.3d 288.) In contrast, where a county employee elects to take a medical leave (paid or unpaid) and has not been discharged, the statute contemplates that the employee will be reinstated upon his or her ability to return to work. (See Stephens v. County of Tulare, supra, 38 Cal.4th at pp. 802-803, 805-808 & fn. 6, 43 Cal.Rptr.3d 302, 134 P.3d 288; Kelly v. County of Los Angeles (2006) 141 Cal.App.4th 910, 922, 924-925, 46 Cal. Rptr.3d 335.) Accordingly, the Government Code is of no help to Davis. (See Stephens, at p. 806, fn. 6, 43 Cal.Rptr.3d 302, 134 P.3d 288.)

B. Back Pay
We also conclude that Davis's unavailability for work due to his nonindustrial illness justified the Commission's denial of full back pay. Even if the LAUSD had not wrongfully demoted him, Davis would not have appeared for work because of his illness, which the trial court found to be unrelated to his demotion and employment. On appeal, Davis does not contend that his illness was work related.
Back pay serves to make an employee whole for the employer's wrongdoing. (See Frudden Enterprises, Inc. v. Agricultural Labor Relations Bd. (1984) 153 Cal.App.3d 262, 268, 201 Cal.Rptr. 371; see also Commodore Home Systems, Inc. v. Superior Court (1982) 32 Cal.3d 211, 213, 220, 185 Cal.Rptr. 270, 649 P.2d 912.) An award should "give [the employee] what he would have earned with the employer less any net earnings during the time [between] his wrongful discharge and reinstatement." (Lisec v. United Airlines, Inc. (1992) 10 Cal.App.4th 1500, 1505, 11 Cal.Rptr.2d 689.)
The remedy should "return[ ] the [employee] to the financial position he would have been in had the unlawful [conduct] not occurred. . . . [T]he offending employer is made responsible only for losses suffered by the [employee] as a result of [its misconduct].... To hold [otherwise] renders the back pay obligation punitive, and abuses the intent of the remedy. It is manifest that ... back pay ... [is] ... compensatory and remedial in purpose, not punitive." (Brady v. Thurston Motor Lines, Inc. (4th Cir.1985) 753 F.2d 1269, 1278.) "`[W]hen a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.'" (Albemarle Paper Co. v. Moody (1975) 422 U.S. 405, 418-419, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 [discussing back pay].) In considering an award of back pay, courts must take care not to grant the employee a windfall. (See Suggs v. Servicemaster Educ. Food Management (6th Cir.1996) 72 F.3d 1228, 1234; Standley v. Chilhowee R-IV School Dist. (8th Cir.1993) 5 F.3d 319, 322.)
*77 As virtually all non-California courts have acknowledged: "[An employee] is entitled to be made whole for losses sustained as a result of a wrongful termination. . . . [The employee], however, is generally not entitled to a recovery in excess of make-whole damages.... [¶] ... [¶] ... `[A]s a general rule, [a wrongfully discharged employee] will not be allowed back pay during any periods of disability' and `an employer who has [committed a wrongful discharge] need not reimburse the plaintiff for salary loss attributable to the plaintiff and unrelated to the [discharge].' "(Starceski v. Westinghouse Electric Corp. (3d Cir.1995) 54 F.3d 1089, 1100-1101, italics added; accord, Aguinaga v. United Food & Com. Workers Intern., supra, 993 F.2d at p. 1473 [back pay award improper where employees would have lost their jobs even if treated fairly]; Blackburn v. Martin (4th Cir.1992) 982 F.2d 125, 129 [employer not liable for back pay where employment would have ended for lawful reason]; Hartman v. Duffey (D.D.C.1998) 8 F.Supp.2d 1, 5 ["back pay is cut off by death, disability, retirement, or voluntary departure from the workforce"].)
"`The appropriate standard for the measurement of a back pay award is to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the [employer's wrongful conduct], the individual would have [held].' [Citation.]
"Taking the `actual' wage formula at face value, one might think it obvious that a back pay award should not be reduced by [earnings] that a plaintiff never actually received. However, in a variety of situations, a back pay award is reduced, or eliminated entirely, if the plaintiff has not receivedor, indeed, could not receive offsetting income in the post-[discharge] period.... Therefore, an employer is allowed to offset any amount that the employee did not actually receive, but should have received, if reasonably diligent. Further, as a general rule, a claimant will not be allowed back pay during any periods of disability. . . . That is to say, if [the plaintiff] had sustained her injuries while on a sight-seeing trip during a vacation, she likely would not be able to recover any back pay at all during the time that she was unavailable to work (or would only be able to recover the difference in disability pay ...) on the theory that she similarly would not have been able to work...." (Mason v. Association for Independent Growth (E.D.Pa.1993) 817 F.Supp. 550, 553-554, italics added.)
In short, "an employer is not liable for backpay during periods that an improperly discharged employee is unavailable for work due to a disability." (Canova v. NLRB (9th Cir.1983) 708 F.2d 1498, 1505; accord, Hardaway Management Co. v. Southerland (Ky.1998) 977 S.W.2d 910, 918.) A different rule applies, however, and full back pay may be awarded where the disability is a result 6f the employer's wrongful conduct. (See Martin v. Department of Air Force (Fed.Cir.1999) 184 F.3d 1366, 1371-1372; Mason v. Association for Independent Growth, supra, 817 F.Supp. at pp. 553-556; Estate of Reynolds v. Dole (N.D.Cal.1990) 57 Fair Empl.Prac.Cas. (BNA) 1848, 1878, 1990 WL 112283, p.*42, affd. sub. nom. Estate of Reynolds v. Martin (9th Cir.1993) 985 F.2d 470.)
The National Labor Relations Board cogently explained several years ago: "The Board has in some cases computed backpay due [discharged employees] without tolling payment for a period of incapacity ..., although as a general rule [employees] have not been allowed backpay during any periods of disability regardless of the cause.... [W]e have now fully considered our prior decisions in this respect and are *78 of the view that some modification is required to take into account the cause of [an employee's] incapacity.
"The origins and causes of infections and organic infirmities, such as influenza and heart attacks, for example, are usually not known and cannot be determined or assumed. It is ordinarily reasonable to assume, however, that absences from work because of such illnesses would probably have occurred even if the employee had not been discharged. As the [employee's] loss therefore cannot be said to have a likely relationship to the unlawful [discharge], disallowance of backpay for all periods of unavailability because of such illnesses is proper. Not only does this approach appear equitable in view of the impossibility of reconstructing a possible cause, but it also affords simplicity of administration in an area which would otherwise be confused and difficult.
"The same underlying reasoning does not, however, apply to periods of illness which occur because of industrial [illness] ... attributable to the unlawful conduct of the [employer]. The causes of such ailments are known and attributable to events which would not have taken place ... had the employee not been unlawfully removed from his employment.... Although other extended disabilities might have occurred absent discharge, this is not a normal expectancy, and hence [an employee] would not reasonably have been expected to suffer the industrially caused ailment and the consequent pay loss if he had retained his former employment.
"It is thus apparent that the practice of disallowing backpay without inquiry as to the nature of the physical disability, the cause thereof, the probability of similar illness in the [employer's] employ, etc., may be convenient but is not always equitable. Rather, we think that equity and reason require that periods of unavailability for work because of illness or accident must be considered on a case-by-case basis. Where an interim disability ... arises from the unlawful discharge and is not a usual incident of the hazards of living generally, the period of disability will not be excluded from backpay." (American Mfg. Co. of Texas (1967) 167 N.L.R.B. 520, 522, fns. omitted, cited with approval in Martin v. Department of Air Force, supra, 184 F.3d at p. 1372; Canova v. NLRB, supra, 708 F.2d at p. 1505; Mason v. Association for Independent Growth, supra, 817 F.Supp. at p. 554; Falls Stamping & Welding Co. v. Intern. Union (N.D.Ohio 1979) 485 F.Supp. 1097, 1144.)
Although not exactly on point, we also find guidance in Rivcom, supra, 34 Cal.3d 743, 195 Cal.Rptr. 651, 670 P.2d 305. There, a company bought a financially distressed farm that employed about 140 union affiliated employees. The company terminated the employees and replaced them with a smaller nonunion workforce. Unfair labor practice charges were filed with the Agricultural Labor Relations Board (ALRB), which found that the terminations were based on an antiunion motive and were unlawful. The ALRB ordered reinstatement and back pay. On appeal, the company argued that the order should not apply to all of the terminated employees because, in light of reduced labor needs, many of them "would not have been rehired in any event." (Id. at p. 773, 195 Cal.Rptr. 651, 670 P.2d 305.)
The Supreme Court agreed, stating: "[The ALRB] fashioned an order compensating losses ... `suffered' by `each of the employees ... as a result of [the employer's] unlawful refusal to hire them....' [¶] Under the circumstances, we construe the order as self-limited to losses directly arising from the unlawful conduct. That interpretation excludes those former employees who would not have been rehired *79 even under a legitimate hiring policy." (Rivcom, supra, 34 Cal.3d at p. 773, 195 Cal.Rptr. 651, 670 P.2d 305, italics in original.)
Similarly, where an employee has been discharged for both a valid reason (wrongful conduct) and an invalid reason (engaging in protected activity), the courts will not grant a remedy if the same decision would have been made for the valid reason. This is so even if the invalid reason was a substantial factor in the decision. (See Williams v. City of Los Angeles (1988) 47 Cal.3d 195, 205, 252 Cal.Rptr. 817, 763 P.2d 480, citing Mt. Healthy City Board of Ed. v. Doyle (1977) 429 U.S. 274, 283-287, 97 S.Ct. 568, 574-576, 50 L.Ed.2d 471; Mt. Healthy, supra, 429 U.S. at pp. 285, 287, 97 S.Ct. 568; Martori Brothers Distributors v. Agricultural Labor Relations Bd. (1981) 29 Cal.3d 721, 729-730, 175 Cal.Rptr. 626, 631 P.2d 60.) Any other rule "could place an employee in a better position ... than he [otherwise] would have occupied." (Mt. Healthy, at p. 285, 97 S.Ct. 568.)
And where an employer discharges an employee for an invalid reason and subsequently learns of a valid reason, back pay may be limited to the period between the discharge and the date the new information is discovered. (See Camp v. Jeffer, Mangels, Butler & Marmaro (1995) 35 Cal.App.4th 620, 632-639, 41 Cal.Rptr.2d 329 & fns. 11, 16, discussing McKennon v. Nashville Banner Publishing Co. (1995) 513 U.S. 352, 358-362, 115 S.Ct. 879, 884-887, 130 L.Ed.2d 852; Finegan v. County of Los Angeles (2001) 91 Cal.App.4th 1, 7-13, 109 Cal.Rptr.2d 762.)[1]
With the foregoing principles of causation in mind, we examine a trilogy of California cases, beginning with our decision in Ahlstedt v. Board of Education (1947) 79 Cal.App.2d 845, 180 P.2d 949 (Ahlstedt). In that case, a permanent employee of the Los Angeles City High School District was discharged. She filed an appeal with the personnel commission, which did not determine whether the discharge was proper and later claimed it had lost jurisdiction over the matter. The trial court issued a peremptory writ of mandate against the board of education and others, ordering them to reinstate the employee and to pay the salary that had accrued during her absence. The defendants countered that full back pay was not warranted because the employee had been ill part of the time. The trial court rejected that contention, finding that (1) the discharge had caused the employee's illness and (2) at all times, she had remained "ready, anxious and willing to carry on and perform all of [her] duties." (Id. at pp. 856-857, 180 P.2d 949.) We affirmed based on those findings. (Ibid.)
We ended our analysis with the following comment: "Furthermore, no showing of prejudice to [the defendants] appears by reason of [the employee's] illness. Her inability to perform the duties of her position was not occasioned by her illness. She was excluded from her position by the acts and conduct of [the defendants] and not by reason of her physical or mental condition. It affirmatively appears from the record that during the period she was *80 prevented by [the defendants] from performing the duties of her position she was not engaged in any other work or activity, and consequently there is nothing to be deducted from the total accrued amount of salary she would have received had she not been unlawfully prevented by [the defendants] from [performing] the duties of her position." (Ahlstedt, supra, 79 Cal.App.2d at p. 857,180 P.2d 949.)
Thus, Ahlstedt recognized two principles. First, a discharged employee is entitled to full back pay if his or her illness is caused by the employer's wrongful conduct. Second, if the employee remains ready, willing, and able to return to work while ill, the employer's wrongful conductnot the employee's illnessis the cause of the lost earnings, and the employer is not prejudiced by having to make full restitution.
In commenting on the lack of prejudice to the employer in Ahlstedt, we did not mean to suggest that in all cases, the discharge is the cause of the employee's lost earnings or that the employer is liable for full back pay regardless of events occurring after the discharge. But that appears to be the interpretation given Ahlstedt by the Fifth District in Carroll v. Civil Service Com. (1973) 31 Cal.App.3d 561, 107 Cal.Rptr. 557 (Carroll). There, a county employee was discharged, and the county civil service commission ordered that he be reinstated with full back pay. In writ proceedings in the-trial court, the county argued that the employee was not entitled to his salary for 147 days he had spent in jail for public drunkenness. As the county pointed out, the employee would not have reported to work or been paid during that time even if he had not been discharged. The trial court ruled that the employee was nevertheless entitled to his full salary for the time he was incarcerated.
Relying in part on our concluding comment in Ahlstedt, the Court of Appeal affirmed, stating: "[H]aving wrongfully caused the initial discharge, the county cannot take advantage of the fortuitous circumstance of a disability of the employee during the period of discharge without first having purged itself of its own wrong by offering to reinstate the employee. Otherwise, the effect would be to further penalize the person wronged rather than requiring the wrongdoer to correct its initial error. It would be equivalent to permitting a party to a contract to take advantage of its own act or omission to escape liability thereon ... and to benefit from its own wrong....
"[T]he concept of being ready, willing and able to perform the duties of the position must necessarily be qualified by making the duty mutual, that is, that the employer also be ready and willing to perform by offering reinstatement to the employee. Until the employer does so, the employee is not required to stand by in readiness during the entire period of the discharge or suspension. To hold the employee is required to stand idly by in readiness to perform would run counter to the concept of duty to mitigate by making [a] reasonable effort to seek other similar employment since an employee thereby would be unable to accept other employment for any substantial period." (Carroll, supra, 31 Cal.App.3d at p. 567, 107 Cal.Rptr. 557, citations omitted.)
We agree with Carroll that an employer cannot take advantage of a discharged employee's disability, at least where the disability is caused by the discharge. Further, courts should hesitate to adopt a rule that encourages a discharged employee to stand idly by, .hoping to be reinstated, as opposed to seeking a comparable job with another employer. Yet we fail to see how Carroll furthered either of those interests. *81 The employee's incarceration was not attributable to his discharge. And the denial of lost earnings during jail time would not encourage discharged employees to avoid other employment. If anything, it would discourage them from committing crimes. Nor do we agree with Carroll's statement that an employee is entitled to full back pay unless and until an offer of reinstatement is made. That notion disregards well recognized principles of causation, gives the employee a windfall, and ignores the circumstances that may exist between the time of discharge and reinstatement. A back pay award should reflect the particular facts of the case. To the extent Carroll is inconsistent with Ahlstedt, we decline to follow it. (Cf. Hoffman Plastic Compounds, Inc. v. NLRB (2002) 535 U.S. 137, 147-152, 122 S.Ct. 1275, 1282-1285 [employees wrongfully selected for layoff were not entitled to back pay where they were not legally authorized to work in United States; award of back pay would encourage individuals to violate federal immigration laws].)
The last case in the trilogy, Mayer v. Multistate Legal Studies, Inc. (1997) 52 Cal.App.4th 1428, 61 Cal.Rptr.2d 336 (Mayer), involved an employee who alleged that his discharge breached a written employment contract. The case was tried to the court, which found in favor of the employee. On the issue of damages, the employer argued that lost earnings were not appropriate for the time the employee received disability benefits attributable to cancer. The employee maintained that his disability did not prevent him from continuing to work in his position but that his medical treatments, which left him bald and frail, prevented him from securing employment elsewhere. The trial court reasoned that the employee was "`precluded as a matter of law from receiving damages for the time period during which [he] was receiving disability benefits.'" (Id. at p. 1433, 61 Cal.Rptr.2d 336, italics added.)
The First District, Division Two, reversed. After discussing Ahlstedt and Carroll, the court explained: "Implicit in these decisions is recognition of the fact that the employers were attempting to invoke an equitable principle, that of setoff, to reduce the plaintiffs' damages....
"[W]e are convinced that the equities in the present case militate strongly against permitting plaintiffs receipt of disability compensation to wholly preclude any award of lost wages from defendant. First, to accept the trial court's ruling would force future employees finding themselves in positions similar to this plaintiff to make an unacceptable election, i.e., accept benefits needed for survival in the present or pursue a more lucrative claim against the employer that may not come to fruition for several years. This unacceptable choice contravenes the policies underlying the Legislature's decision to make disability compensation available in the first place....
"Second, defendant's wrongful conduct placed plaintiff in a materially worse position when his illness struck. While defendant makes much of a purported conflict in the evidence regarding whether plaintiff actually could have continued to work ... during his illness instead of relying upon disability benefits, it is clear that plaintiffs wrongful termination deprived him of the opportunity to even attempt (with or without reasonable accommodations) to perform his duties during his treatments. Moreover, it is uncontroverted by the record (and we believe by simple common sense) that a person undergoing chemotherapy for a life-threatening cancer and showing the effects thereof is not going to be successful in finding a comparable sales position." (Mayer, supra, 52 Cal.App.4th *82 at pp. 1435-1436, 61 Cal.Rptr.2d 336, italics added.)
We have previously stated that the mere receipt of disability benefits, as well as representations made by an employee in obtaining them, do not necessarily mean the employee is unable to perform his or her job. (See Jackson v. County of Los Angeles (1997) 60 Cal.App.4th 171, 184-188, 70 Cal.Rptr.2d 96.) The United States Supreme Court later reached the same conclusion. (See Cleveland v. Policy Management Systems Corp. (1999) 526 U.S. 795, 801-805, 119 S.Ct. 1597, 1601-1603; see also Levin v. Ligon (2006) 140 Cal.App.4th 1456, 1471-1473, 45 Cal. Rptr.3d 560, discussing Jackson and Cleveland.)
Similarly, in the present case, we do not rely on Davis's receipt of any benefits or statements he made to obtain them in concluding that he was unable to work. Rather, we rely on other evidence in that regard, for example, his failure to provide a medical release to return to work. This case is also more straightforward than Ahlstedt and Mayer because it involves a demotion, not a discharge. Davis was not terminated but placed in a lower paying job. Unlike the employees in Ahlstedt and Mayer, he had the option to continue working for the same employer. But he commenced a disability leave of absence before he learned of the demotion, did not work during the demotion, and was medically unable to work in his prior position after the Commission upheld his appeal. His illness was found to be not work related. Given these facts, the cause of Davis's unavailability is not open to debate. His illnessnot his demotion or employment was the sole cause of his inability to work.
Davis's reliance on Mayer is therefore misplaced. In that case, the court noted: "[The employer's] wrongful act, not plaintiffs illness, prevented plaintiff from performing his duties under the contract." (Mayer, supra, 52 Cal.App.4th at p. 1434, 61 Cal.Rptr.2d 336.) Accordingly, Mayer is consistent with Ahlstedt.
In California, the burden of establishing an employee's failure to mitigate rests with the employer, and, in the absence of other evidence, it is presumed that the employee has been damaged in the amount he or she would have received but for the discharge. The measure of recovery by a wrongfully discharged employee is the amount of salary he or she would have received plus other benefits, less the amount that the employer affirmatively proves the employee has earned or, with reasonable diligence, might have earned from other employment. (See California School Employees Assn. v. Personnel Commission (1973) 30 Cal.App.3d 241, 249-250, 106 Cal.Rptr. 283; Parker v. Twentieth Century-Fox Film Corp. (1970) 3 Cal.3d 176, 181, 89 Cal.Rptr. 737, 474 P.2d 689.) Similarly, based on the authorities we have discussed, an employer has the burden of proving that an employee would not have had any earnings due to a nonindustrial illness. (See Starceski v. Westinghouse Electric Corp., supra, 54 F.3d at p. 1101; Falls Stamping & Welding Co. v. Intern. Union, supra, 485 F.Supp. at pp. 1100, 1136, fn. 15, 1140, 1144.)
Here, the employer established that a wrongfully demoted employee would not have received a salary because of an illness unrelated to his demotion and employment. Under the causation principles applied by the California and federal courts, the Commission properly concluded that Davis was not entitled to lost earnings for the period of his unavailability. He would not have been able to work and would not have had any earnings regardless of whether the LAUSD had demoted him.

*83 C. Other Remedies
In the trial court, Davis contended he was entitled to relief in addition to immediate reinstatement and full back pay, namely, attorney fees and costs, damages for emotional distress, repayment of medical costs, restoration of benefit time, and reimbursement for taxes and penalties incurred as a result of the early withdrawal of retirement benefits. The trial court addressed these remedies separately, explaining why each one was inappropriate or unauthorized.
On appeal, Davis should have separately briefed the propriety of each remedy. Instead, he merely asserted that he should be made whole. That general principle is insufficient. Davis did not cite any pertinent authority that would require the Commission to award any of the specific remedies he was denied. The point is therefore waived. (See Schoendorf v. U.D. Registry, Inc. (2002) 97 Cal.App.4th 227, 237, 118 Cal.Rptr.2d 313.)

III

DISPOSITION
The judgment is affirmed.
We concur: ROTHSCHILD, J. and JACKSON, J.[*]
NOTES
[1] In some situations, NLRB and ALRB decisions may not be of assistance outside the area of administrative law. (See Sandrini Brothers v. Agricultural Labor Relations Bd. (1984) 156 Cal.App.3d 878, 881-888, 203 Cal. Rptr. 304 [ALRB and NLRB may award interest on back pay recovery that exceeds interest allowed in civil actions by state Constitution and Code of Civil Procedure].) That is not the situation here. (See generally Falls Stamping & Welding Co. v. Intern. Union, supra, 485 F.Supp. at pp. 1102-1104, 1134-1136.)
[*] Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.