[No. C038246. Third Dist. May 29, 2003.]

FAIR POLITICAL PRACTICES COMMISSION, Plaintiff and Respondent, v.
CALIFORNIANS AGAINST CORRUPTION et al., Defendants and Appellants.

**COUNSEL**

Law Office of Bruce Adelstein and Bruce Adelstein for Defendants and Appellants.

Steven Benito Russo and Julia Bilaver for Plaintiff and Respondent.

## OPINION

**NICHOLSON, Acting P. J.**—In 1995, Ravi Mehta, Chairman of the Fair Political Practices Commission (FPPC or Commission), signed a document delegating some of the Commission's functions to employees of the FPPC. Before the FPPC ratified the delegation, the employees held proceedings against an organization and two of its treasurers for violations of the Political Reform Act.[1] When the organization and treasurers failed to respond to notices from the FPPC employees, a default decision was entered against the organization and treasurers including a fine of $808,000.

The FPPC initiated this action to obtain a civil judgment against the organization and its treasurers. The trial court entered judgment in the FPPC's favor for almost $1.1 million, including interest. On appeal, defendants assert (1) the FPPC was not entitled to judgment pursuant to Government Code section 91013.5 because it did not follow the procedures set forth in the Political Reform Act and implementing regulations, (2) the FPPC failed to consider mitigating evidence, and (3) the penalty was unconstitutionally excessive. We affirm.

### BACKGROUND

Californians Against Corruption (CAC) was organized on March 26, 1992, with Carl Russell Howard as treasurer. Stephen J. Cicero was later the treasurer from July 1993 to April 1994.[2] CAC used money it raised primarily to fund a campaign to recall Senator David Roberti. From January 1992 to June 1994, CAC received approximately $141,559 in contributions and expended approximately $103,091.

Ravi Mehta became chairman of the FPPC on January 14, 1995. Several days later, he signed a document entitled "Delegation of Authority." Citing provisions of the Government Code and regulations concerning the FPPC, he purported to "delegate the statutory, regulatory, and administrative duties and authority of the Executive Director" to Robert Tribe, Jeevan Ahuja, and Steven G. Churchwell. Specifically, the document stated that Ahuja was to have "the authority to conduct probable cause proceedings, including, but not limited to, making a determination as to the existence of probable cause . . . ."

In June 1995, Jeevan Ahuja presided at a hearing to determine whether probable cause supported proceedings against defendants for violations of the Political Reform Act. Although they were given notice of the hearing,

---

[1] The official name of the act is the Political Reform Act of 1974. (Gov. Code, § 81000.) We will use, however, the shorter version of the act's name.

[2] At times hereafter, CAC, Howard, and Cicero are referred to, collectively, as defendants.

defendants did not attend and did not send counsel. On June 29, 1995, Ahuja signed an order finding "probable cause to believe that [defendants] violated provisions of the Political Reform Act . . . ."

On August 8, 1995, Robert Tribe filed an accusation against defendants asserting 404 violations of the Political Reform Act and seeking a penalty of $2,000 for each violation. The following chart shows the allegations against defendants.

| Number | Alleged Violation |
| --- | --- |
| 1-2 | Failure to file a timely semi-annual statement |
| 3 | Failure to file a late contribution report |
| 4-96 | Failure to report occupation of a contributor |
| 97-187 | Failure to report employer of a contributor |
| 188-250 | Failure to itemize a contribution |
| 251-355 | Failure to report street address of contributor |
| 356 | Contributions for six-month period understated by $2,024 |
| 357 | Contributions for a 30-month period understated by $10,408 |
| 358-392 | Failure to report address of contributor |
| 393-396 | Failure to file allocation pages showing contributions to others |
| 397 | Failure to notify major contributors |
| 398 | Failure to maintain records of expenditures |
| 399 | Failure to retain bank statements |
| 400 | Failure to maintain records of receipts |
| 401 | Failure to maintain records of contributors' occupations and employers |
| 402 | Failure to maintain records of nonmonetary contributions |
| 403 | Failure to maintain records of dates contributions were received |
| 404 | Failure to maintain records of mass mailings |

The FPPC sent the accusation to defendants. Because defendants did not respond with a notice of defense within 15 days, Tribe, on October 20, 1995, signed a default decision and order finding defendants violated the Political Reform Act as alleged in the accusation and imposing a fine of $808,000. Ravi Mehta signed the default decision and order on November 2, 1995. Defendants filed a petition for writ of mandate, but the petition was later dismissed for lack of prosecution.

At a meeting of the Commission on April 4, 1996, it was noted that Mehta signed the January 20, 1995 delegation document. The notes of the Commission hearing continue: "Commissioner Rushford recommended the appointment of Mr. Churchwell and Mr. Tribe as Acting Co-Executive Directors with divided responsibilities. Mr. Churchwell will handle the probable cause hearings and Mr. Tribe will do the rest of the Executive Director responsibilities. In addition, this motion will ratify Chairman Mehta's assignment of those duties to them from January 20, 1995, when the delegation was first made. . . . The motion was carried."

On January 3, 1996, the FPPC filed an action against defendants to obtain a civil judgment in the amount of the fine, as allowed by Government Code section 91013.5. Defendants answered the complaint, and the FPPC moved for summary judgment. The trial court granted the FPPC's motion and later entered judgment against defendants for $808,000, plus $287,513.33 in interest.[3]

DISCUSSION

I

*Compliance with Required Procedures*

After the FPPC finds that an organization or person has violated the Political Reform Act and imposes a fine, it may obtain a civil judgment requiring payment of the fine. In a proceeding to obtain a civil judgment, however, the FPPC bears the burden of establishing several prerequisites, including a showing that the fine was imposed following the procedures set forth in the Political Reform Act and implementing regulations. (Gov. Code,

---

[3]On April 17, 2002, the FPPC filed a request for judicial notice of Senate and Assembly committee reports concerning the enactment of the bill that included Government Code section 91013.5. The request is appropriate pursuant to Evidence Code section 452, subdivision (c), and is therefore granted.

§ 91013.5.)[4] Defendants argue that the FPPC was not entitled to judgment in this matter because it did not establish the fine was imposed following the proper procedures when it delegated Commission functions to Ahuja and Tribe. We conclude defendants cannot make this argument here because they did not challenge the authority of FPPC officials in earlier proceedings.

## A. Political Reform Act

The Political Reform Act was adopted by initiative in 1974. It established the FPPC and charged it with primary responsibility for the impartial, effective administration and implementation of the Political Reform Act. (*Consumers Union of U.S., Inc. v. California Milk Producers Advisory Bd.* (1978) 82 Cal.App.3d 433, 436 [147 Cal.Rptr. 265].)

The FPPC appoints an executive director who must act in accordance with applicable laws, policies, and regulations. (Gov. Code, § 83107.)[5] "The Commission may delegate authority to the chairman or the executive director to act in the name of the Commission between meetings of the Commission." (Gov. Code, § 83108.)

The first phase of FPPC proceedings after investigation of an alleged violator of the Political Reform Act is to determine whether there is probable cause to believe a violation has occurred. The Government Code provides for a determination of probable cause by the Commission. (Gov. Code, § 83116.) By regulation, however, this determination has been delegated to the executive director: "The Executive Director may find there is probable

---

[4]Former Government Code section 91013.5 stated:

"In addition to any other available remedies, the commission or the filing officer may bring a civil action and obtain a judgment in small claims, municipal, or superior court, depending on the jurisdictional amount, for the purpose of collecting any unpaid monetary penalties, fees, or civil penalties imposed pursuant to this title. The venue for this action shall be in the county where the monetary penalties, fees, or civil penalties were imposed by the commission or the filing officer. In order to obtain a judgment in a proceeding under this section, the commission or filing officer shall show, following the procedures and rules of evidence as applied in ordinary civil actions, all of the following:

"(a) That the monetary penalties, fees, or civil penalties *were imposed following the procedures set forth in this title and implementing regulations.*

"(b) That the defendant or defendants in the action were notified, by actual or constructive notice, of the imposition of the monetary penalties, fees, or civil penalties.

"(c) That a demand for payment has been made by the commission or the filing officer and full payment has not been received." (Stats. 1984, ch. 670, § 5, p. 2465, italics added.)

[5]"The Commission shall appoint an executive director who shall act in accordance with Commission policies and regulations and with applicable law. The Commission shall appoint and discharge officers, counsel and employees, consistent with applicable civil service laws, and shall fix the compensation of employees and prescribe their duties." (Gov. Code, § 83107.)

cause to believe a violation has occurred if the evidence is sufficient to lead a person of ordinary caution and prudence to believe or entertain a strong suspicion that a proposed respondent committed or caused a violation. A finding of probable cause by the Executive Director does not constitute a finding that a violation has actually occurred." (Cal. Code Regs., tit. 2, § 18361, subd. (d)(4).) A finding of probable cause allows the Commission to hold a hearing concerning whether a violation has occurred and, if it so finds, impose a fine. (Gov. Code, § 83116.)

▮▮▮  Acting pursuant to Mehta's delegation of authority to act as an executive director, Jeevan Ahuja determined probable cause supported further proceedings against defendants and Robert Tribe filed the accusation and signed the default decision and order. Defendants assert these actions were taken without proper authority because Mehta's delegation was ineffectual. We conclude, however, that even assuming Mehta's delegation was ineffectual, defendants' challenge of the authority of Ahuja and Tribe is precluded by the de facto officer doctrine.

### B.  *De Facto Officer Doctrine*

▮▮▮  " 'Persons claiming to be public officers while in possession of an office, ostensibly exercising their functions lawfully and with the acquiescence of the public, are *de facto* officers. . . . The lawful acts of an officer *de facto*, so far as the rights of third persons are concerned, are, if done within the scope and by the apparent authority of office, as valid and binding as if he were the officer legally elected and qualified for the office and in full possession of it.' [Citations.]" (*In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 42 [37 Cal.Rptr. 74, 389 P.2d 538].) "[T]he right of a de facto officer to an office cannot be collaterally attacked. [Citations.] A right to hold office may not be collaterally attacked by a challenge to the official acts performed by the person holding such office. [Citation.]" (*Ibid.*)

▮▮▮  Here, the FPPC officials, acting pursuant to Mehta's delegation, acted as public officials, exercising their functions with public acquiescence. Their actions were within the scope or apparent authority of the offices they purported to hold. Therefore, their actions were valid and binding in the face of collateral attack.

Defendants, nevertheless, make several arguments against application of the de facto officer doctrine here: First, they are attacking the officials' authority directly, not collaterally. Second, the de facto officer doctrine does not apply because of an exception for appointment requirements enacted to protect people subject to the FPPC's authority. Third, collateral estoppel

bars the FPPC from asserting the de facto officer doctrine. Fourth, the de facto officer doctrine is bad law. And fifth, Ahuja and Tribe were not de facto officers.

### 1. *Collateral Attack*

Defendants assert this is a direct, not collateral, attack on the authority of Ahuja and Tribe. They base this assertion on the language in Government Code section 91013.5 requiring the FPPC, as an element of its enforcement action, to establish "[t]hat the monetary penalties, fees, or civil penalties were imposed following the procedures set forth in this title [the Political Reform Act] and implementing regulations." (Gov. Code, § 91013.5, subd. (a).) Since the statutes concerning delegation of authority within the FPPC are contained in the Political Reform Act, defendants argue, the failure to delegate authority according to those statutes and their implementing regulations is a failure to follow the procedures set forth in the Political Reform Act. This failure prevents the FPPC from establishing an element of its cause of action against defendants under Government Code section 91013.5, subdivision (a). Thus, according to defendants, the qualification of Ahuja and Tribe to act is directly, not collaterally, at issue.

This argument misconstrues Government Code section 91013.5, subdivision (a), which refers only to procedures for *imposing* the fine, not qualifications of FPPC employees to act. By using the phrase "imposed following the procedures," the Legislature evinced an intent to protect a person or organization subject to an FPPC fine from civil enforcement of that fine if the FPPC failed to follow the procedures for imposing the fine, as required by the Political Reform Act. This has to do with the procedural rights afforded to the person or organization, not to the authority of the FPPC to act through its employees. Thus, Government Code section 91013.5, subdivision (a), does not implicate the authority of the officiating officer. Nothing in the statute supports the conclusion the Legislature intended to allow someone such as defendants here to ignore proceedings of the FPPC and later defend a civil action to enforce the imposed fine based on an attack on the authority of the officiating officer.

Accordingly, Government Code section 91013.5 does not provide for a direct attack on the authority of the FPPC's officiating officer. Defendants' attack is collateral.

### 2. *Protection Exception*

Defendants assert there is an exception to the de facto officer doctrine, which occurs when the government officer's appointment requirements were

imposed to protect the person subject to the officer's authority. He bases this assertion of an exception, primarily, on a law review note and an opinion of the Illinois Supreme Court. (See Note, *The De Facto Officer Doctrine: The Case for Continued Application* (1985) 85 Colum. L.Rev. 1121, 1135 (*De Facto Officer Doctrine*); *Daniels v. Industrial Com'n* (2002) 201 Ill.2d 160 [266 Ill.Dec. 864, 775 N.E.2d 936] (*Daniels*).) We need not decide whether the law review note and the Illinois case reflect California law because, even assuming they do, they do not provide for an exception to the de facto officer doctrine under the facts of this case.

The major thesis of the law review note is that the de facto officer doctrine should be retained, even though its continued existence has been threatened by a federal court decision. (*De Facto Officer Doctrine, supra,* 85 Colum. L.Rev. at p. 1121; see also *Andrade v. Lauer* (D.C. Cir. 1984) 729 F.2d 1475 [questioning validity of de facto officer doctrine].) Citing several draft evasion cases in which courts allowed as a defense the improper selection of members of local draft boards, the note proposes an exception to the de facto officer doctrine "when a qualification for a specific office aims to protect the individuals subject to that official's authority." (*De Facto Officer Doctrine, supra,* 85 Colum. L.Rev. at p. 1135.) The note concludes that a court "should discern the policies embodied in the particular requisite to office and determine whether they are designed to protect the interests of individuals appearing before such officers or to protect the administration of government." (*Id.* at p. 1138.)

Attempting to apply this exception described in the law review note to their case, defendants observe that, by statute, not more than three of the five FPPC members may be from the same political party and that its members are appointed by different elected officials. (See Gov. Code, §§ 83100, 83101, 83102.) They also note that the FPPC, acting as a body, appoints the executive director and other officers. (See Gov. Code, § 83107.) They conclude that these statutes establish that the appointment requirements at issue here were imposed to protect individuals.

We disagree. The facts of this case do not imperil interests personal to defendants that are protected by the Political Reform Act. Although we assume for the purpose of argument that the delegation from the chairman (Mehta) to those acting in the functions of executive director (Ahuja and Tribe) was improper because the FPPC had not given the chairman authority to act on its behalf, it could have done so under Government Code section 83108. Furthermore, the FPPC ratified Mehta's action later. This is not a case in which Mehta could not have been authorized to delegate authority;

instead, the proper authorization did not come until after he made the delegation. (Contra, *Daniels, supra,* 775 N.E.2d at pp. 938-939 [in which arbitrators were appointed by commission chairman to fill positions that could only be filled by gubernatorial appointment].) We therefore conclude the specific failure to follow the statutory scheme to delegate duties of the executive director did not implicate the statutory provisions meant to protect defendants' individual interests, as discussed in the law review note. This case does not fall within the law review note's exception to the de facto officer doctrine.

In *Daniels,* the Illinois Supreme Court held that a workers' compensation claimant, on direct review of a compensation award, could challenge the legal status of the commissioners who adjudicated his claim. (*Daniels, supra,* 775 N.E.2d at p. 940.) This is readily distinguished from the present case because, here, we consider a collateral attack. Even if, under California law, defendants could make a direct attack on authority of Ahuja and Tribe consistent with *Daniels,* they did not. Therefore, *Daniels* is unhelpful to defendants.

### 3. *Collateral Estoppel*

The issue of improper delegation by Mehta appears to have been litigated and resolved against the FPPC in another case in the trial court. (*Horcher v. Fair Political Practices Commission* (Super. Ct. Sacramento County, 1996, No. 96CS00804).) Defendants argue that collateral estoppel precludes the FPPC from arguing the de facto officer doctrine in this case because, even though the de facto officer doctrine was not raised in the *Horcher* case, it could have been. In support of this assertion, defendants cite *Warga v. Cooper* (1996) 44 Cal.App.4th 371 [51 Cal.Rptr.2d 684], a case in which the court applied the doctrine of res judicata, not collateral estoppel, to an issue in an action involving the same parties as the prior proceeding. (*Id.* at pp. 377-378.) Defendants were not involved in the prior proceeding here; therefore, only the doctrine of collateral estoppel may be applied, if appropriate. We find it is not.

The elements of the collateral estoppel doctrine are well established. " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits.' " (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 849 [25 Cal.Rptr.2d 500, 863 P.2d 745].) It is undisputed that the de facto officer doctrine was not litigated in *Horcher.* Accordingly, neither of the first two elements can be established. Collateral estoppel

does not preclude the FPPC from asserting the de facto officer doctrine in this proceeding.

### 4. *Validity of De Facto Officer Doctrine*

Recognizing that the California Supreme Court has held that California courts follow the de facto officer doctrine (see, e.g., *In re Redevelopment Plan for Bunker Hill, supra,* 61 Cal.2d 21), defendants, to preserve the issue for possible later review, assert the de facto officer doctrine is bad law and should not be followed. We are bound by the Supreme Court's holding. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

### 5. *Ahuja and Tribe as De Facto Officers*

Defendants assert this is not a case in which the de facto officer doctrine is applicable because Mehta did not appoint Ahuja and Tribe as acting executive directors; instead, he delegated to them the duties of an executive director. This is a distinction without a difference. Ahuja and Tribe purported to perform the functions of an executive director. They held themselves out as properly authorized to so perform. The fact that the source of their purported authority was by delegation rather than appointment makes no difference because, by virtue of their performance, they purported to possess the requisite office necessary for those functions. They were not interlopers sitting on a street corner purporting to mete out justice. They were FPPC officials recognized to be performing within the apparent scope and by the apparent authority of the office of executive director. (See *In re Redevelopment Plan for Bunker Hill, supra,* 61 Cal.2d at p. 42.)

We therefore find that the de facto officer doctrine precludes defendants' collateral attack on the authority of Ahuja and Tribe to officiate in FPPC proceedings against them.[6]

## II

### *Consideration of Mitigating Circumstances*

Defendants also assert the FPPC failed to follow the procedures set forth in the Political Reform Act and implementing regulations by failing to

---

[6]Given our conclusion that defendants, because of the de facto officer doctrine, cannot raise the issue of whether Ahuja and Tribe had the proper authority to act, we need not consider the FPPC's additional arguments that defendants were guilty of laches and failed to exhaust their administrative remedies.

consider mitigating evidence when imposing the fine. We reject this assertion because it is made for the first time on appeal.

An implementing regulation of the Political Reform Act required the FPPC to include mitigating information known to the staff in the probable cause report: "If the Chief of the Enforcement Division decides that probable cause proceedings should be commenced . . . , he or she shall direct the Enforcement staff to prepare a written report, hereafter referred to as 'the probable cause report.' The probable cause report shall contain a summary of the law and evidence gathered in connection with the investigation, including any exculpatory and mitigating information of which the staff has knowledge and any other relevant material and arguments." (Cal. Code Regs., tit. 2, § 18361, subd. (d)(1).)

Attached as an exhibit to defendants' opposition to the FPPC's motion for summary judgment in this action is a letter written by Howard to an FPPC investigator in June 1994. In the letter, Howard stated: "[T]he reason why we withheld donors' full addresses (only providing name, city, and state) is that some of our donors are engaged in civil disobedience over the Roos-Roberti [assault weapon] ban and thus we don't feel comfortable releasing their home street addresses." In the probable cause report prepared in May 1995, FPPC staff wrote that there were no mitigating circumstances.

Defendants assert the failure of FPPC staff to include defendants' asserted reason for failing to include some information in reporting to the FPPC contravened the regulation requiring inclusion of mitigating information. This assertion, however, is made for the first time on appeal. Since defendants provide no good reason for failing to make this assertion in the trial court, we will not consider it here. (See *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [54 Cal.Rptr.2d 27] [issues raised for first time on appeal are waived].)

III

*Constitutionality of Fine*

Defendants assert the judgment in favor of the FPPC was improper because the fine was constitutionally excessive. Since the constitutionality of the fine is not an element the FPPC must prove in an action pursuant to Government Code section 91013.5, we must determine whether defendant

may raise the constitutionality of the fine at this late date. We conclude this issue cannot be raised in this statutory action.

When an agency takes quasi-judicial action that may be challenged judicially by way of mandamus, the action is presumptively valid until shown to be otherwise in the mandate action. (*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 484-485, fn. 9 [131 Cal.Rptr. 90, 551 P.2d 410].) "[U]nless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions. . . . Exhaustion of judicial remedies . . . is necessary to avoid giving binding 'effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action.' [Citation.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 69-70 [99 Cal.Rptr.2d 316, 5 P.3d 874], fn. and italics omitted.)

While the holding in *Johnson* would appear to bar raising the constitutionality of the fine in this action after defendants failed to assert that issue in their mandate action, they assert they can do so here because it is a legal issue that can be resolved on the undisputed facts. Their reading of the exhaustion of judicial remedies doctrine is too narrow. The cases cited approvingly in *Johnson* show that both the factual and legal conclusions of an agency are binding in later litigation if they are not challenged by way of mandamus. (See *Johnson v. City of Loma Linda, supra*, 24 Cal.4th at pp. 70-71, citing *Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637 [47 Cal.Rptr.2d 29] [failure to challenge condition of building permit by administrative mandate precludes 42 U.S.C. § 1983 federal civil rights action]; *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235 [244 Cal.Rptr. 764] [employee's failure to challenge city civil service commission finding employee was properly demoted bars factually inconsistent claims]; *City of Fresno v. Superior Court* (1987) 188 Cal.App.3d 1484 [234 Cal.Rptr. 136] [employee's dismissal of administrative mandate action with judgment in favor of city bars action for damages].)

For example, in *Briggs v. City of Rolling Hills Estates, supra,* 40 Cal.App.4th 637, the plaintiffs built a combination patio and deck without a permit. As a condition for approval of other additions to the home, the city required the plaintiffs to remove the patio/deck, which it determined was in violation of a privacy ordinance. The plaintiffs did not seek review of the city's decision by way of mandamus; instead, they filed an action alleging

violation of their civil rights, seeking an injunction against enforcement of the ordinance and enforcement of the condition itself. The trial court granted the city summary judgment. (*Id.* at pp. 641-642.)

On appeal, the *Briggs* court determined the privacy ordinance was not unconstitutionally vague on its face and the court therefore denied the plaintiffs their requested injunction concerning enforcement of the statute. (*Briggs v. City of Rolling Hills Estates, supra,* 40 Cal.App.4th at p. 643.) As for the requested injunction concerning enforcement of the condition, the appellate court found the plaintiffs could not attack the ordinance, as applied, because they did not seek mandamus relief. The court noted that, if the condition was improperly imposed, it could have been vacated in a mandate action. (*Id.* at p. 645.)

Defendants' assertion of the unconstitutionality of the award as a defense in this action is analogous to the *Briggs* plaintiffs' assertion that the condition was unenforceable. Whether the condition in *Briggs* was properly imposed was a legal conclusion, as is, here, whether the fine was unconstitutionally excessive. Accordingly, defendants' assertion that the exhaustion of remedies doctrine applies only to factual findings is incorrect. They are precluded, in this action, from arguing the fine was unconstitutionally excessive because they could have challenged the fine as unconstitutionally excessive in a mandate action.

Defendants cite a Wisconsin case for the proposition that the exhaustion of judicial remedies doctrine should not be applied under certain circumstances, even if the party failed to exhaust judicial remedies. In *Sauk County v. Trager* (1984) 118 Wis.2d 204 [346 N.W.2d 756], the court stated the exhaustion of remedies doctrine, as followed in California: "The decision of an administrative agency is legally binding although subject to review and the aggrieved party should comply with the agency decision or initiate a challenge promptly and in accordance with the applicable statutes. A party who wants judicial review of an agency decision should carry the burden of initiating a petition for review rather than defying the agency and awaiting an enforcement action." (*Id.* at pp. 760-761.) The court went on to say, however, that application of the exhaustion of judicial remedies doctrine is discretionary. It thereafter concluded that, under the circumstances of that case, the court would not apply the exhaustion of remedies doctrine. (*Id.* at p. 762.)

■ Contrary to the Wisconsin Supreme Court holding, the California Supreme Court's development of the exhaustion of remedies doctrine does

not provide for discretionary decisions of lower courts concerning whether to apply the doctrine. (See *Johnson v. City of Loma Linda, supra,* 24 Cal.4th at pp. 69-70.) Since we must apply California precedent, we reject defendants' assertion that we should exercise discretion and decline to apply the exhaustion of remedies doctrine.

### DISPOSITION

The judgment is affirmed. The FPPC's request for judicial notice is granted. Each party shall bear its own costs on appeal.

Raye, J., and Morrison, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 10, 2003.