Filed 4/12/13  Rosario v. County of Los Angeles Dept. of Health Services CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CARLOS M. ROSARIO,<br><br>     Plaintiff and Appellant,<br><br>  v.<br><br>COUNTY OF LOS ANGELES DEPARTMENT OF HEALTH SERVICES,<br><br>     Defendant and Respondent. | B239182<br><br>(Los Angeles County<br> Super. Ct. No. BS131781) |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Ann I. Jones, Judge.  Affirmed.

Law Offices of Stephan Math and Stephan Math for Plaintiff and Appellant.

Hausman & Sosa, Jeffrey M. Hausman and Larry D. Stratton for Defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiff Carlos M. Rosario, a former physician specialist at Martin Luther King-Drew Medical Center, was discharged in 2009 by his employer, defendant County of Los Angeles Department of Health Services (Department). Plaintiff appealed his termination to the Civil Service Commission of the County of Los Angeles (Commission). The Commission upheld the Department's termination decision. Plaintiff sought a peremptory writ of mandate in the superior court for reinstatement and backpay. The trial court denied plaintiff's writ petition.

On appeal, plaintiff contends the Department denied him a fair hearing under *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*). Plaintiff claims he received inadequate notice of the basis for his termination, and the Department did not consider his written response to its Notice of Intent to Discharge when it made its final termination decision. He also contends his termination was based on protected activity, such as his right to petition for a redress of grievances and his assertion of his constitutional right to remain silent. Additionally, he contends the evidence on which his termination was based was protected by the litigation privilege. Lastly, he contends the trial court abused its discretion by disregarding evidence that was favorable to plaintiff.

We affirm, finding that the majority of plaintiff's claims were never raised either before the Commission or in the trial court, or were inadequately (and sometimes incomprehensibly) addressed on appeal, and therefore cannot be reviewed by this court. Plaintiff's *Skelly* claims are cognizable on appeal, but they fail on their merits.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff began his career with the Department in August 2001 as a physician specialist at the Martin Luther King-Drew Medical Center, and continued there until his termination on November 19, 2009. However, in May 2005, plaintiff was suspended, pending an investigation, for submitting false timecards. On September 21, 2005, plaintiff was discharged, but he successfully appealed that discharge to the Commission. In August 2006, the discharge was reduced to a 15-day suspension after the Commission determined "there is no dispute that [plaintiff's] time cards for several years were

2

inaccurate[,]" however, "there is also no dispute . . . that [his] Department Chair . . . instructed [him] to code his time [inaccurately]."

While the 2005 disciplinary proceedings were pending, plaintiff complained of timecard fraud by Department employees to the Los Angeles County District Attorney, Los Angeles County Supervisor Gloria Molina, the Department of Fair Employment and Housing, and Congressman Henry A. Waxman. In his letters to these officials, plaintiff claimed the Department had "railroad[ed]" him "as a result of [his] complaining (whistle blowing) both internally and externally of the nidorous [*sic*] and deeply entrenched corruption (Physicians and Administrators) here at this hospital." He reported "rampant corruption" at the hospital including "time card fraud as well as other illegal activities."

1.      **Plaintiff's Deposition Testimony About Timecards**

In September 2007, plaintiff filed a lawsuit against the County of Los Angeles (hereafter County), alleging he was wrongfully subjected to disciplinary action (the 2005 termination) after he complained of "'the intentional falsification of time cards.'" That case was ultimately resolved against him.[1] In April 2008, plaintiff was deposed in his case against the County. During his deposition, plaintiff was asked whether he had complied with the County's discovery request seeking production of "all documents supporting your claim that the County engaged in intentional violation of [L]abor [C]ode [s]ection 1102.5 . . . [¶] . . . your claim for taking action against you because you are essentially a whistleblower." Plaintiff's counsel produced a "group of documents . . . which consists solely of time cards."

When the County's counsel asked plaintiff whether the timecards were County timecards, and whether they belonged to plaintiff or other employees, plaintiff testified they were County timecards for "[o]ther people." When asked how he came to possess the timecards of other individuals, plaintiff responded "I never—no one ever gave me any time cards. And I don't even recall how that information was communicated to me, but I

---

[1]      We take judicial notice of our unpublished opinion in *Rosario v. County of Los Angeles* (Sept. 30, 2009, B210349).

3

unearthed that." When asked again how he got the timecards, plaintiff said, "As I recall, when this was taking place, they were left about. And what happens is that—they were just left about." When asked where they were "left about," plaintiff responded, "And as I was copying my time cards -- ." He was interrupted by County counsel, who stated, "I think was have some serious problems here." Plaintiff's counsel agreed, and they went off the record so plaintiff and his counsel could confer.

When they came back on the record, the County's counsel identified some of the employees whose timecards were produced, and asked plaintiff whether any of those employees gave plaintiff "authorization to take possession of their time cards." Plaintiff's counsel objected, asserting the questions sought information that tended to incriminate plaintiff. Plaintiff followed his counsel's advice and did not respond. When queried about his earlier testimony that he had found the cards laying about, plaintiff testified, "Right. They were going to be thrown out." When asked how he knew they were going to be thrown out, plaintiff's counsel again objected on self-incrimination grounds, and plaintiff did not answer the question. Plaintiff did not answer any additional questions about the timecards.

## 2. The County's Investigation of Plaintiff's Possession of Timecards

The County initiated an investigation into plaintiff's possession of the timecards. On May 13, 2009, Martina Ford and Fred Williams, Department performance management investigators, met with plaintiff and his attorney and memorialized their findings in affidavits. Ford asked plaintiff "how he obtained time records of other employees," and plaintiff gave a new explanation. This time, he said "they were delivered [and] left at his home anonymously." He did not save the envelope in which they were delivered. Plaintiff denied he had taken the timecards from the hospital. He "did not notify his superiors, payroll, [or] personnel regarding the confidential documents."

In a May 28, 2009 affidavit, plaintiff testified he "received a packet, anonymously, at his home, which was placed outside his apartment door. The package was very thick, and did not have a return address or postmark . . . . [H]e ripped open the package, and in

4

the process ripped some it its contents as well . . . he threw away the envelope and the ripped contents . . . . [H]e was aware time cards were confidential before he had received the timecards at his door, anonymously . . . . [H]e asked his colleagues what he should do with the anonymously sent timecards and they did not provide any useful advice . . . . [H]e decided to store them." The colleagues he consulted were Drs. Tim Dutra and Rosabel Young. They were former County employees at the time he consulted them. Plaintiff did not talk to anyone at the Department about the timecards "because he was falsely accused of timecard fraud whilst [*sic*] he was actually reporting timecard fraud to the respective authorities."

Plaintiff testified further that "he went to the fifth floor mailroom to make copies of his own time . . . card as he became aware of false accusations of timecard fraud being made against him. He . . . saw timecards strewn about the shredder; he viewed a couple of them and recognized them as copies of those which had already been sent to him and so he threw them away into the office trashcan and quickly left the room." According to plaintiff, "he has never taken time cards off the premises, ever made copies of time cards, or has ever shared copies with anyone other than his attorney." However, he admitted he did "deliver in person copies to supervisor Gloria Molina's office; copies were also sent . . . to Rep. Henry Waxman and the district attorney." Plaintiff also averred he had reported timecard fraud to various Department supervisors.

On August 7, 2009, Ford and Williams interviewed Dr. Young, who told them that several years earlier, plaintiff contacted her about a position she was trying to fill in her practice. He told her about problems with his timecards. Plaintiff said he and other Department employees were not being paid. Dr. Young told Ford and Williams she had problems with the approval and submission of her timecards when she was previously employed with the County. Plaintiff never told Dr. Young he possessed timecards belonging to other employees.

**3.     The Department's Notice of Intent to Discharge**

On August 27, 2009, the Department issued a Notice of Intent to Discharge plaintiff. The basis for the intended discharge was plaintiff's violation of the

5

Department's Employee Evaluation and Discipline Guidelines and Policy and Procedure No. 362 (Department Guidelines or Guidelines). Specifically, it was alleged plaintiff failed "to follow established rules and regulations"; he provided "inaccurate, false or misleading information" during an administrative or internal affairs investigation; and he had violated a policy against the "[u]nauthorized access" to confidential personnel records. The notice also stated plaintiff violated Department policy concerning the confidentiality of personnel records, which provides that "[i]n accordance with federal and state privacy laws, employee personnel . . . and payroll records are considered confidential information. Information in such records may only be used for administrative purposes, without employee consent . . . . Unauthorized release of employee information shall be cause for disciplinary action."

The notice identified the facts in support of the proposed discharge, including plaintiff's statements in his deposition about how he came to possess the timecards, and his subsequent inconsistent statements to Department investigators, as well as his further inconsistent statements in his declaration. The notice also listed as a basis for discharge plaintiff's statement in his affidavit that he sought advice from Dr. Young about what to do with the timecards, and Dr. Young's denial that plaintiff had ever mentioned to her that he received timecards belonging to other employees. Further, the notice stated plaintiff did not have the authorization of the Department or its employees to possess or distribute the timecards.

### 4.  *Skelly* **Hearing and Discharge**

Plaintiff responded to the Department's notice on September 15, 2009, and participated in a hearing pursuant to *Skelly*, *supra*, 15 Cal.3d 194. On November 19, 2009, the Department issued its formal notice discharging plaintiff from employment with the Department, stating the same grounds identified in the Notice of Intent to Discharge.

### 5.  **The Commission Proceedings**

Plaintiff appealed to the Commission, which conducted a hearing on August 16, 2010. Three witnesses testified on behalf of the Department, including Williams, Kathy

6

Hanks, and Michael Lampert. Plaintiff testified in his own behalf. Exhibits and affidavits were admitted into evidence.

Williams, performance management investigator for the Department, testified that he investigated the allegations against plaintiff. Specifically, he investigated plaintiff's "unauthorized possession of time records." He authenticated the Department Guidelines referenced in the notice of discharge. Policy No. 362 provides that payroll records are confidential, the information contained in the records can only be used for administrative purposes, without the employee's consent, and "[u]nauthorized release of employee information shall be cause for disciplinary action." Moreover, the County discipline Guidelines prohibit "[u]authorized access to confidential records, or any portion of a record, including but not limited to: medical records, personnel records, and credential files."

Hanks, an administrator with Contract Programs and Special Services who acted as the *Skelly* officer, testified to her experience conducting *Skelly* hearings. It was her role to look at the presentations made by both parties, to determine the appropriateness of the recommended discipline, and then to make a recommendation to the Department. She did not consider plaintiff's previous discipline when making her recommendation.

After the *Skelly* hearing, Hanks permitted plaintiff to submit declarations in support of his position, which she considered in making her recommendation. These included a declaration of Dr. Dutra, signed September 25, 2009, in which Dr. Dutra declared that in 2005, he had a conversation with plaintiff about a packet of timecards plaintiff received that belonged to other employees. Plaintiff told Dr. Dutra he received the timecards anonymously in an unmarked package. Hanks also considered the declaration of Dr. Young dated September 30, 2009, in which Dr. Young declared she and plaintiff had conversations in 2005 and 2008 about an unmarked packet of timecards for other employees that plaintiff received at his home.[2]

---

[2] Dr. Rosemary Chequer also submitted a declaration averring plaintiff told her, in 2005, about a packet of timecards belonging to other employees plaintiff had received

7

Based on the evidence before her, Hanks recommended that discharge was appropriate. She based this recommendation on plaintiff's possession of confidential timecards belonging to other employees, and the high standard of confidentiality applicable to physicians. There were discrepancies between plaintiff's deposition testimony, his statements during the investigation, and his testimony at the *Skelly* hearing about how he came into possession of the timecards. Therefore, Hanks concluded plaintiff was dishonest. She testified receipt of unsolicited documents was not inappropriate, but the retention of those documents was inappropriate. Plaintiff could have reported receipt of the timecards to management, or to the audit and compliance office, or he could have anonymously called the fraud hotline. Hanks did not consider the fact that counsel raised objections during plaintiff's deposition in making her recommendation. She did consider the written response provided by plaintiff's counsel on September 15, 2009, when she made her recommendation to the Department.

Lampert, the chief of performance management for the Department, made decisions regarding discharge and discipline for employee misconduct. It was his predecessor, retired County employee Carolyn Clark, who signed plaintiff's discharge letter. Lampert recommended plaintiff's termination to Clark in his former capacity as the manager of the investigative unit for the Department. In making his recommendation, he considered the rules that were violated, the imposition of any previous discipline, and the potential impact on the Department. He did not consider any previous disciplinary actions against plaintiff that were not sustained, or plaintiff's lawsuit against the County. He did consider the *Skelly* officer's recommendation.

Lampert recommended discharge because the position of physician specialist requires a great deal of trust from the Department and patients. Lampert had serious concerns about plaintiff's truthfulness and ability to use sound judgment because he

---

anonymously. Hanks did not consider Dr. Chequer's declaration, because she never received it. Even if she had received it, she testified it would not have changed her recommendation to the Department. Plaintiff raises no issue about this in this appeal.

testified at his deposition that he did not know how he came to possess the timecards, and then later averred that he had received them in an anonymous package. Also, plaintiff displayed poor judgment in keeping the timecards for several years without letting his employer know he had them, and by only discussing the matter with *former* County employees who were not part of the chain of command. The range of appropriate discipline for such conduct is suspension to discharge. Lampert recommended discharge because of the "egregious" nature of the conduct and plaintiff's access to confidential patient information.

Lampert did not recall reviewing the written response to the Notice of Intent to Discharge provided by plaintiff's counsel on September 15, 2009. However, he does not customarily review all documents considered by the *Skelly* officer in making a recommendation. That is because an employee is afforded a full opportunity to respond to the charges against him at the *Skelly* hearing, before the Department makes its final determination.

Plaintiff stipulated he did not have permission to possess the timecards. He testified he was accused of timecard fraud in 2005, but was "exonerated" and ultimately suspended for 15 days for other "minor things involving behavior." Although plaintiff saw employee timecards in the copy room at work, he did not take them, and could not have taken them because he was "always escorted to the copy room." He was escorted due to claims in 2003 that he mismanaged a patient. He was not permitted to see patients, and was closely monitored while on Department premises. At the time of his deposition, he could not recall how he came to possess the employee timecards, and only remembered seeing them "strewn about" at work. He was "flustered and . . . nervous" at his deposition.

The timecards "were deposited outside [plaintiff's] door." Around the time he received them, he had complained of timecard fraud to the hospital's chairman and the chief medical officers. He also contacted Supervisor Molina, the district attorney, and Congressman Waxman. Plaintiff believed he received the timecards sometime between January 2004 and his termination. He did not inform the Department about the timecards

9

because he had been accused of timecard fraud. Plaintiff was "very apprehensive of returning copies of documents which [he] didn't ask for." Plaintiff believed he would have been fired if he had done so. Because he had been accused of timecard fraud, plaintiff thought it would be "unwise" to "return exculpatory evidence." He simply "stowed . . . away" the timecards, and did not share them with anyone. However, he later testified that he gave copies of the timecards to Congressman Waxman and Supervisor Molina. Plaintiff forgot he had the timecards, and when asked about them at his deposition, he did not recall that they had been anonymously delivered to his door. He remembered this, however, almost immediately after his deposition, but did not correct the deposition to reflect the anonymous delivery of the timecards.

Plaintiff testified that when he received the anonymous envelope, he ripped it open, and in the process tore some of the timecards. He threw the torn timecards away without examining them. He denied ever closely examining the timecards he received, notwithstanding his testimony that he believed them to be "exculpatory," and that he made copies of the documents to send to various officials.

In June 2008, plaintiff participated in an internal audit by the Department concerning the timecards, and told the auditors they had been anonymously delivered to his home. The timecards were in an envelope that said only "Rosario." Plaintiff was surprised when Ford and Williams interviewed him about the timecards in May 2009.

Plaintiff knew timecards are confidential.

The hearing officer issued a proposed decision recommending the Commission uphold the Department's decision to discharge plaintiff. Plaintiff filed objections, asserting he did not receive proper notice of the basis of his discharge. The Commission voted to overrule plaintiff's objections and adopted the hearing officer's Findings of Fact and Conclusions of Law as its final decision.

Accordingly, the Commission affirmed the Department's decision to discharge plaintiff, finding that discharge was appropriate under Department Guidelines concerning the confidentiality of personnel records and unauthorized access to them, and because plaintiff provided inconsistent accounts of how he obtained the timecards, "cast[ing]

10

serious doubt over [his] credibility and honesty." He also maintained and copied the timecards, and sent copies to various officials. Plaintiff failed to notify his supervisors or any Department official that he was in possession of confidential time records. Given the high standard of honesty that physicians are held to, discharge was an appropriate penalty.

## 6.        Petition for Writ of Mandate in Superior Court

Plaintiff filed a petition in the superior court seeking a peremptory writ of mandate directing the Commission to vacate its decision and order plaintiff's reinstatement with backpay. The petition alleged that plaintiff did not receive a fair trial because the Notice of Intent to Discharge did not provide adequate notice of the grounds for his discharge. The petition also alleged the Department failed to meet its burden of proof because the finding that his statements to Department investigators contradicted his earlier deposition testimony was not supported by the weight of the evidence. The petition also alleged that to the extent the Commission based its conclusions of law on plaintiff's incomplete deposition testimony, these conclusions "are in violation of the exercise of petitioner['s] constitutional rights as asserted by his counsel on his behalf at said deposition." Also, the petition alleged any conclusion of law based on his possession and transmission of the timecards to various officials violates Labor Code section 1102.5.

In his trial brief in support of the petition, plaintiff raised only the following issues: the Notice of Intent to Discharge did not place plaintiff "on notice that the mere retention of [timecards] without informing a person in authority of same was a matter with which he was being charged"; the Commission failed to consider evidence that was favorable to plaintiff; and the findings of the Commission are not supported by substantial evidence.

The trial court concluded the evidence supported the Commission's conclusion that plaintiff "improperly possessed and used confidential information and that he provided inaccurate, false or misleading information during the course of the investigation." The trial court found discharge was an appropriate penalty because of the substantial trust placed in plaintiff in his position as a physician specialist.

11

This timely appeal followed.

## DISCUSSION

Even though the majority of the issues raised in this case will be resolved without reaching the merits, it is necessary to discuss the appropriate standards of review, so that the impact of the various deficiencies in the appeal are placed in proper context. Plaintiff filed his petition in the superior court pursuant to Code of Civil Procedure section 1094.5, contending the Commission's decision to uphold his discharge was an abuse of discretion, as it was unsupported by the evidence and contrary to the law, and that he was denied a fair hearing. Because the Commission's order affirming plaintiff's discharge affected a fundamental vested right, the trial court was required to exercise its independent judgment in reviewing the administrative record. (*Davis v. Los Angeles Unified School Dist. Personnel Com.* (2007) 152 Cal.App.4th 1122, 1130 (*Davis*).) The independent judgment test required the trial court to not only examine the administrative record for errors of law, but also exercise its independent judgment upon the evidence in a limited trial de novo. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143 (*Bixby*).) The trial court was permitted to draw its own reasonable inferences from the evidence and make its own credibility determinations. (*Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs.* (2003) 107 Cal.App.4th 860, 868 (*Morrison*).) At the same time, it was required to afford a strong presumption of correctness to the administrative findings, and the challenging party was required to demonstrate that such findings were contrary to the weight of the evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

Our task on appeal is to conduct a limited review of the record to determine only whether the *trial court's* findings (rather than the administrative agency findings) are supported by substantial evidence. (*Bixby*, *supra*, 4 Cal.3d at p. 143, fn. 10; *Davis*, *supra*, 152 Cal.App.4th at pp. 1130-1131; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52 [where superior court required to exercise independent review of administrative record, "'the scope of review on appeal is limited'"].) We resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's

12

decision. (*Valiyee v. Department of Motor Vehicles* (1999) 74 Cal.App.4th 1026, 1031.) "Where the evidence supports more than one reasonable inference, we are not at liberty to substitute our deductions for those of the trial court." (*Morrison*, *supra*, 107 Cal.App.4th at p. 868.)

However, where the question presented is a question of law, on undisputed facts, our review of the trial court's decision is de novo. (See *Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107-108; *Riveros v. City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1349-1350; *Roe v. State Personnel Bd.* (2004) 120 Cal.App.4th 1029, 1036.)

## 1.    Procedural Bars to Review

This appeal suffers from a number of deficiencies that necessarily limit the scope of our review. First, plaintiff's statement of facts in his opening brief provides an incomplete summary of the evidence before the Commission and the trial court. If we were to review only his opening brief, we would be left with the impression that plaintiff was a whistleblower, who was terminated for reporting timecard fraud at Martin Luther King-Drew Medical Center. Far from providing us an objective summary of the record, his statement of facts reads like an opening or closing argument, detailing the many ways that the Department has purportedly persecuted plaintiff, ignoring the considerable evidence that supported the discharge decision.

An appellant must recite in the opening brief all "significant facts" included in the record, not just the evidence favorable to his position. (Cal. Rules of Court, rule 8.204(a)(2)(C); *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1274 (*County of Solano*).) Plaintiff's brief omitted *any reference at all* to the testimony of Department employees Williams and Hanks before the Commission, and included only a limited discussion of Lampert's testimony. Plaintiff did not discuss the contents of the affidavits submitted by Ford and Williams, or his own declaration, and failed to thoroughly discuss the nature of his deposition testimony, which was essential evidence in support of his discharge. All of this evidence is crucial to the proper consideration of the arguments

13

raised on appeal, given the substantial evidence standard of review. (*Bixby*, *supra*, 4 Cal.3d at p. 143, fn. 10.)

After respondent pointed out this failure, plaintiff attempted to restate the facts in his reply brief. However, plaintiff's failure to state all of the evidence fairly in his *opening* brief necessarily waives any alleged error on appeal. (*Foreman & Clark Corp. v. Fallon*, *supra*, 3 Cal.3d at p. 881; *County of Solano*, *supra*, 75 Cal.App.4th at p. 1274.) The California Rules of Court require the statement of facts to appear in an opening brief, and it is well settled that matters raised for the first time in the reply brief will not be considered. (*REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766.) It was plaintiff's burden to establish that the underlying decision was "contrary to the weight of the evidence." (*Davis*, *supra*, 152 Cal.App.4th at p. 1130.) He did not do this in light of his incomplete representation of the facts.

Also, plaintiff's characterization of the issues to be decided in this appeal ignores well-settled law on which issues may be properly raised before this court. In this appeal, plaintiff contends his termination was based on protected petitioning activity (his act of suing the County) and the Department relied on evidence and conduct protected by the litigation privilege in making its termination decision (his deposition testimony and the timecards produced during his deposition). Also, his characterization of the facts appears to intimate he was wrongfully terminated for whistleblowing (reporting timecard fraud to various entities). (See Lab. Code, § 1102.5.)

None of these issues were adequately raised or developed before the Commission or trial court, and we cannot, in the first instance, decide them on appeal. Plaintiff is not entitled to a fourth trial on the merits in the Court of Appeal. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 (*Abelleira*) ["relief must be sought from the administrative body and this remedy exhausted before the courts will act"]; *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 135 [same]; *Fair Political Practices Com. v. Californians Against Corruption* (2003) 109 Cal.App.4th 269, 281-283; see also *Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486 [The right to complain

14

on appeal may be waived if the issue was not raised in the trial court.].) Moreover, the issue of whether plaintiff was entitled to the protections of Labor Code section 1102.5 for whistleblowing was not briefed or developed on appeal, notwithstanding its presence as a dominant theme in plaintiff's factual characterization of this case. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

The issue of whether plaintiff's termination was based on his assertion of his Fifth Amendment privilege against self-incrimination during his deposition was raised before the Commission and the trial court. The trial court concluded plaintiff's deposition testimony was "provided freely and voluntarily" and the questions to which he asserted a constitutional privilege were not a basis for any action against plaintiff. Plaintiff's failure to fairly summarize the facts has waived his right to any further consideration of this issue on appeal, as the resolution of this claimed error turns on whether plaintiff's refusal to answer questions at his deposition was the basis for the Department's termination decision.

Ultimately, plaintiff's framing of the facts and issues has made meaningful review of the above claims of error impossible. Even if these claims were cognizable on appeal, they do not appear to have substantive merit. Plaintiff's claims regarding protected petitioning activity, the litigation privilege, and the right against self-inclination are ill-conceived. The record supports the trial court's conclusion that plaintiff's discharge was based on his wrongful retention of confidential records, and his untruthful statements when the matter was investigated. It is of no consequence that plaintiff's possession of confidential timecards came to light during his deposition in an action he commenced against the County, because nothing in the record suggests his discharge was based on his protected activity. (See, e.g., *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 809-810 [where protected activity merely will be used as evidence in an action, claim does not arise from protected activity].) Moreover, the litigation privilege is "a limitation on liability, precluding use of the protected communications and statements as the basis for a tort action," but is not an evidentiary privilege prohibiting discovery of the statements or communications, or their use for evidentiary purposes in other

15

proceedings. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638, fn. 1; *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma* (1986) 42 Cal.3d 1157, 1168.)

Likewise, the conclusion that plaintiff provided misleading answers during his deposition and during the Department's investigation was in no way based on the assertion of his right against self-incrimination. Plaintiff testified before the Commission that he was flustered during his deposition, and did not recall the source of the timecards. During his deposition, he provided one account of how he came to possess them. During the investigation, he provided a conflicting account. Nothing in the record suggests plaintiff's discharge was based on his assertion of his right to remain silent during his deposition. Rather, it was based on his possession of confidential personnel records and his conflicting statements made during his deposition and the subsequent investigation in violation of Department policy.

Lastly, the claim that the trial court failed to consider exculpatory evidence is wholly without merit. We will uphold the trial court's findings if they are based on substantial evidence, and will not reweigh or resolve conflicts in the evidence. Plaintiff is essentially asking us to do so. (*Morrison*, *supra*, 107 Cal.App.4th at p. 868.) Plaintiff provided grossly inconsistent accounts of how he came to possess the confidential timecards. His credibility was seriously impugned. Based on the nature of his position as a physician, trusted with confidential medical records, it was permissible to discharge him.

## 2. Due Process

The only cognizable claim on appeal is plaintiff's claim that his due process rights were violated in the *Skelly* proceedings, as this claim is not based on any disputed facts, was raised below, and presents a pure question of law. The due process claim is twofold. Plaintiff contends that the Notice of Intent to Discharge did not provide adequate notice of the grounds for his termination. He also claims that his due process rights were violated when Lampert, a Department employee who participated in the decision to terminate him, made that decision without reviewing counsel's September 15 response to the Notice of Intent to Discharge.

16

Respondent contends that these claims are not cognizable on appeal because they were never certified to the Commission, and therefore plaintiff did not exhaust his administrative remedies. (See *Abelleira*, *supra*, 17 Cal.2d at p. 292; *Fair Political Practices Com. v. Californians Against Corruption*, *supra*, 109 Cal.App.4th at pp. 281-283.) However, the procedural fairness of the *Skelly* procedure was squarely raised before the Commission and the trial court. Plaintiff and the Department submitted a joint prehearing statement identifying the issues before the Commission as whether: (1) "the allegations contained in the Department's letter of November 19, 2009 [are] true"; and (2) "If any or all are true, is the discipline appropriate." In that statement, plaintiff also proposed that a third issue should be decided, e.g., "Whether [plaintiff] was denied due process at his *Skelly* meeting." Plaintiff's petition to the superior court averred that plaintiff was not afforded due process and the Department "failed to provide adequate notice" of the grounds for his termination. It does not appear the Commission or the trial court considered the issue directly. However, because the question of the procedural fairness of the proceedings is a pure question of law, we will review plaintiff's due process claim de novo. (*Bostean v. Los Angeles Unified School Dist., supra,* 63 Cal.App.4th at p. 107.)

One of the bases for the Commission's and trial court's determination that discharge was appropriate was that plaintiff wrongfully possessed and retained confidential personnel records of other employees for a number of years. Plaintiff contends that the Notice of Intent to Discharge was insufficient to put him on notice that the retention of confidential records could provide a basis for his discharge. We are not persuaded. The Notice of Intent to Discharge recited that "unauthorized access to confidential records" constituted misconduct, that plaintiff admitted during his deposition and later in the investigation that he had confidential personnel records in his home for several years, and that he never alerted anyone at the Department of this fact.

Rule 18.02 of Los Angeles County Civil Service Rules requires that before a discharge becomes effective, "the employee shall receive a written notice from the appointing power of intent to invoke discharge or reduction, and specific grounds and

17

particular facts therefor.  The employee shall then be allowed a reasonable time, not to exceed 10 days, to respond orally or in writing to the appointing power before the discharge or reduction shall become effective."  Likewise, *Skelly* requires "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline."  (*Skelly*, *supra*, 15 Cal.3d at p. 215.)  Clearly, the allegations in the notice encompass the wrongful retention of confidential records, which were accessible to plaintiff while they were in his apartment for a number of years, regardless of how they came into his possession.  "Access" is defined as an "opportunity to reach or use or visit."  (Oxford American Desk Dict. (2d ed. 2001) p. 6.)

Plaintiff also complains that Lampert's failure to consider counsel's response to the Notice of Intent to Discharge, before making any final termination decision, violated his due process rights under *Skelly*.  This claim is also without merit.  It is undisputed that the *Skelly* hearing officer considered counsel's response in making her recommendation to the Department.  Plaintiff was allowed to fully participate in the *Skelly* hearing.  It is of no consequence that one of the final decision makers in the Department did not review some of the documents underlying the *Skelly* officer's recommendation, since the *Skelly* officer took into consideration all of the relevant evidence and arguments.

### DISPOSITION
The judgment is affirmed.  Respondent shall recover its costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.


18